Kathleen J. Abke, #12422
Savanna Jones, #17624
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
kabke@strongandhanni.com
sjones@strongandhanni.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CHRISTOPHER F., individually and on behalf of his minor child, K. F., <br><br> Plaintiffs, <br><br> vs. <br><br> CIGNA/CARE ALLIES, INC.; INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS; MASTERS, MATES & PILOTS BENEFIT PLAN, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 1:22−cv−00096 <br><br> Judge Dustin B. Pead |

Plaintiffs Christopher F. ("Christopher") and K. F. ("K."), by and through undersigned counsel, complain and allege against Defendants Cigna/CareAllies, Inc. ("CareAllies"); International organization of Masters, Mates & Pilots ("MM&P"); and Masters, Mates & Pilots Benefit Plan (the "Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Christopher and K. are individuals residing in Clatsop County, Oregon. Christopher is K.'s father.

2. MM&P is a labor union representing licensed mariners headquartered in Linthicum Heights, Maryland. At all relevant times, Christopher was an employee of MM&P and he continues to be employed by MM&P.

3. The Plan is a self-funded employee welfare benefit plan under 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act of 1975 ("ERISA") offered to employees of MM&P. At all relevant times, Christopher was a participant in the Plan and K. was a beneficiary of the Plan. Christopher and K. continue to be participants and beneficiaries of the Plan.

4. CareAllies is an insurance company headquartered in Bloomfield, Connecticut and is a subsidiary of Cigna. CareAllies was the third-party claims administrator for the Plan.

5. At all relevant times, CareAllies acted as an agent for the Plan and MM&P.

6. As a beneficiary of his father's health insurance plan, K. received treatment, which CareAllies is responsible to cover, at Triumph Youth Services ("Triumph") in Brigham City, Utah from June 10, 2018 through October 25, 2019.

7. Triumph is a Utah-licensed residential facility that provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

8. CareAllies denied claims for payment of K.'s medical expenses in connection with his treatment at Triumph.

9. This Court has jurisdiction over this case under 29 U.S.C § 1132 (e)(1) and 28 U.S.C. § 1331.

10.     Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's nationwide serve of process and venue provisions, because the treatment at issue took place in Utah, and because CareAllies routinely does business in Utah and across the United States through its network of affiliates. In addition, venue in Utah will save the Plaintiffs costs in litigating this case. In light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely K.'s privacy will be preserved.

11.     Plaintiffs seek payment of K.'s denied claims from July 2, 2018 through October 25, 2019 (the "DOS") pursuant to the terms of ERISA the Plan, and pursuant to 29 U.S.C § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA").

12.     Plaintiffs also seek an award of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## GENERAL ALLEGATIONS

### *Background*

13.     K. is the oldest of two children. K.'s biological father was allegedly a heroin and methamphetamine addict. K.'s mother was also a methamphetamine and analgesics addict. Christopher has been K.'s stepfather since his birth, and officially adopted K. in 2015.

14.     K. displayed troubling behaviors at a young age and was diagnosed with ADHD combined type and Tourette's syndrome in 2006.

15. K.'s mother and Christopher separated in 2013 and divorced in 2016. K. had difficulty adjusting to the divorce, displaying behavioral, sensory, and fine motor development issues in school.

16. In 2015, K.'s mother crashed a car into a tree while under the influence of methamphetamines and benzodiazepines with K. and his brother inside. Both children suffered serious contusions and lacerations. Christopher was granted immediate, emergency full custody, which was later made permanent.

17. K.'s mental health struggles continued as he began using and selling drugs, exhibiting erratic behaviors, and threatening to attack and kill his family members.

18. Before entering residential treatment, K. was enrolled in therapy and counseling multiple times.

### *Treatment at Triumph*

19. K. was admitted to Triumph on June 10, 2018 for treatment of his mental, emotional, and behavioral health issues.

20. During his time at Triumph, K. participated in individual and group therapy with licensed mental health counselors. An individualized treatment plan was developed and K.'s progress was monitored and overseen by licensed counselors.

21. K. made slow but steady with his various mental health and behavioral issues while at Triumph and was discharged from treatment on October 25, 2019.

22. Triumph is a residential treatment center and is classified as an intermediate level of care because it offers services which are less intensive than acute hospitalization but more intensive than outpatient treatment.

*Prelitigation Claims Denials and Appeals*

23.     Claims were submitted to the Plan for coverage of K.'s treatment at Triumph.

24.     On July 3, 2018, CareAllies denied payment of K.'s treatment at Triumph as not medically necessary. In the denial letter, CareAllies wrote that K.'s "symptoms do not meet Cigna's Behavioral Health Medical Necessity Criteria for continued stay at residential mental health level of care for children and adolescents . . . as [K. was] no longer presenting a risk of harm to [himself] or others" and because K.'s "issues can continue to be treated at a lower level of care."

25.     The denial letter further stated that Plaintiffs were entitled to pursue the first level of CareAllies' internal appeals process.

26.     Accordingly, on December 10, 2018, Plaintiffs timely submitted a level 1 appeal of the July 3, 2018 denial of payment for K.'s treatment at Triumph for the denied DOS.

27.     In the December 10, 2018 level 1 appeal, Christopher argued that K.'s treatment at Triumph was medically necessary.

28.     Christopher pointed out that the July 3, 2018 denial appeared to use a higher standard of what symptoms and behaviors qualify a patient for continued stay at a residential mental health level of care under Cigna's Behavioral Health Medical Necessity Criteria, rather than the criteria stated in the Plan.

29.     Christopher also provided a detailed history of K.'s behavioral and treatment struggles, including letters from K.'s former treating providers.

30.     Christopher also reminded CareAllies of his rights under both ERISA and the Mental Health Parity and Addiction Equity Act ("MHPAEA"). Specifically, he advised CareAllies that plans such as the Plan that offer behavioral health benefits are required to offer those benefits

at parity with comparable medical or surgical benefits and that MHPAEA requires coverage for intermediate facilities such as Triumph.

31.     On January 17, 2019, CareAllies sent a letter to Christopher denying the level 1 appeal, again stating K.'s treatment at Triumph was not medically necessary because it did not qualify K. for a continued stay at a residential mental health level of care under Cigna's Behavioral Health Medical Necessity Criteria.

32.     In the January 17, 2019 denial, CareAllies also noted that there was no evidence of physical instability of psychosis driving K.'s behaviors or of any threat to other people, and that "around-the-clock structure and interventions" had not been proposed, so there was nothing to suggest that K. could not treat his mental, emotional, behavioral, and substance abuse issues in an outpatient setting.

33.     The denial letter further stated that Plaintiffs were entitled to pursue the second level of CareAllies' internal appeals process.

34.     Accordingly, on July 10, 2019, Plaintiffs timely submitted a level 2 appeal of the July 3, 2018 denial of payment for K.'s treatment at Triumph for the denied DOS.

35.     Christopher again argued that K.'s treatment at Triumph was medical necessary and pointed out that the July 10, 2019 denial also used a higher standard of what symptoms and behaviors qualify a patient for continued stay at a residential mental health level of care under Cigna's Behavioral Health Medical Necessity Criteria, rather than the criteria stated in the Plan.

36.     On August 8, 2019, CareAllies sent Christopher a letter denying the level 2 appeal for lack of medical necessity.

37. In the August 8, 2019 denial, CareAllies now indicated that K.'s symptoms did not meet Cigna's Behavioral Health Medical Necessity Criteria for continued stay at residential treatment level of care because the documentation showed that K. was not involved in treatment team goals and methods to best of his abilities, had not been honest in discussions of substances abuse, had plan to run away if returned home, and expressed limited motivation to work on his relationship with his parent. In other words, K.'s commitment to active use of program was erratic and not sufficient to justify his treatment at Triumph.

38. The denial letter further stated that Plaintiffs were entitled to pursue an external review performed by an independent review organization.

39. Accordingly, on November 25, 2019, Plaintiffs requested an external review.

40. On May 20, 2020, independent review organization MES Peer Review Services ("MES") sent a letter to Christopher upholding CareAllies' denial.

41. MES determined K.'s treatment at Triumph was not medically necessary because the "documentation did not indicate ongoing acute safety concerns that would have necessitated 24 hours a day 7 days a week mental health treatment from 7/2/18 onwards." Specifically, MES pointed out there was no documented suicidal or homicidal ideation, psychotic symptoms, or self-injurious behaviors.

42. The letter concluded by stating that Christopher had exhausted his internal appeal rights. Thus, Plaintiffs have exhausted their administrative remedies and are now entitled to bring this ERISA action against Defendants.

43. K. continued to receive treatment at Triumph until October 25, 2019.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

44. Defendants incorporate by reference paragraphs 1 through 43, above.

45. ERISA sets higher-than marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as an agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

46. ERISA also emphasizes accurate claims processing and evaluation by requiring administrators to provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-ligation appeals process. 29 U.S.C. § 1133(2).

47. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §§ 1104 and 1133 to act solely in Plaintiffs' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries.

48. Specifically, Defendants breached their fiduciary duties by:

   a) Failing to properly administer claims for benefits by refusing to issue a proper denial, failing to inform Plaintiffs of the specific basis and support for the denial;

   b) Failing to provide a full, fair, and complete review of Plaintiffs' level one appeal that considered and addressed all comments, documents, records and information provided by Plaintiffs;

   c) Failing to appropriately review Plaintiffs' denied claims, including failing to meet the requirement that medical reviewers have opinions and expertise equivalent to the claimant's treating providers;

d) Failing to adhere to ERISA's appeal response requirements by citing to portions of the Plan that did not support the stated bases for denying Plaintiffs' claims;

e) Failing to provide coverage for K.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders;

f) Applying exclusion criteria that did not exist in the Plan to deny Plaintiffs' claims;

g) Failing to properly process, review and respond to Plaintiffs' ongoing claims for payment of K.'s treatment at Triumph.

49. The denial of benefits K.'s treatment was a breach of contract and caused Christopher to incur medical expenses that should have been paid by the Plan in an amount exceeding $100,000.

## SECOND CAUSE OF ACTION
### (Claim for Violation of MHPAEA Under 29 U.S.C. § 1132(a)(3))

50. Defendants incorporate by reference paragraphs 1 through 49, above.

51. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MPAEA is part of CareAllies' fiduciary duties.

52. MHPAEA requires ERISA plans to provide coverage for mental health treatment and substance use disorders that is no less generous or favorable than that provided for treatment of medical/surgical disorders and conditions.

53. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment

limitations applied to substantially all medical and surgical benefits covered by ERISA plans and from imposing separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185(a)(3)(A)(ii).

54. Examples of improper nonquantitative treatment limitations under MHPAEA include, but are not limited to: medical management standards limiting or excluding benefits based on medical necessity; restrictions based on geographic location; facility type, provider specialty; and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii)(A) and (H).

55. The Plan also violated MHPAEA by evaluating K.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when analogous levels of medical or surgical benefits would have been paid.

56. The actions of Defendants in failing to provide coverage for K.'s treatment violates the terms of the Plan, ERISA and its underlying regulations, and MHPAEA.

57. The actions of Defendants have caused damage to Plaintiffs in the form of denial of payment of K.'s treatment.

58. Plaintiffs have the right to obtain appropriate equitable remedies under 29 U.S.C. § 1132(a)(3) based on CareAllies' and the Plan's violations of MHPAEA including, but not limited to:

 a) A declaration that Defendants' actions violate MHPAEA;

 b) An injunction ordering Defendants to cease violating MHPAEA and requiring compliance with the statute;

c) An order requiring the reformation of the Plan's terms and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

d) An order requiring disgorgement of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and United insured plans as a result of Defendants' violations of MHPAEA;

e) An order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' MHPAEA violations;

f) An order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

g) An order equitably estopping Defendants from denying Plaintiffs' claims in violation of MHPAEA; and

h) An order providing restitution from Defendants to Plaintiffs for their losses arising out of Defendants' violations of MHPAEA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be proven at trial, as follows:

1. Judgment in the total amount that is owed for K.'s mental health treatment at Triumph from July 2, 2018 through October 25, 2019.

2. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action.

     3.     Pre- and post-judgment interest on the past due benefits pursuant to Utah Code Ann. § 15-1-1.

     4.     Attorney fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

     5.     For such further relief as the Court deems just and proper.

DATED this 5th day of August 2022

STRONG & HANNI

By: */s/ Kathleen J. Abke*
Kathleen J. Abke
Savanna Jones
*Attorneys for Plaintiffs*

County of Plaintiffs' Residence:
Clatsop County, Oregon